[971 NE2d 350, 948 NYS2d 220]

In the Matter of LISA HARBATKIN, Appellant, v NEW YORK CITY DEPARTMENT OF RECORDS AND INFORMATION SERVICES et al., Respondents.

Argued April 25, 2012; decided June 5, 2012

**POINTS OF COUNSEL**

*Greenberg Traurig LLP*, Albany (*Michael J. Grygiel, William A. Hurst* and *Cynthia E. Neidl* of counsel), for appellant. I. The

Appellant Division erred in finding that the City carried its burden of establishing that historical information contained in its "anti-Communist" investigation files is specifically exempt from disclosure under the Freedom of Information Law. (*Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562; *Matter of Westchester Rockland Newspapers v Mosczydlowski*, 58 AD2d 234; *Matter of Russo v Nassau County Community Coll.*, 81 NY2d 690; *Matter of Newsday, Inc. v Sise*, 71 NY2d 146, 486 US 1056; *Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen*, 69 NY2d 246; *Matter of Newsday, Inc. v Empire State Dev. Corp.*, 98 NY2d 359; *Matter of Mantica v New York State Dept. of Health*, 94 NY2d 58; *Matter of Gould v New York City Police Dept.*, 89 NY2d 267; *Matter of Journal Publ. Co. v Office of Special Prosecutor*, 131 Misc 2d 417; *Matter of Fink v Lefkowitz*, 47 NY2d 567.) II. The promises of confidentiality made by the New York City Board of Education behind closed doors with the effect of shielding its own conduct from public scrutiny deserve little weight in the balancing process. (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477; *Matter of Johnson v New York City Police Dept.*, 257 AD2d 343; *Matter of Scarola v Morgenthau*, 246 AD2d 417; *Mulgrew v Board of Educ. of the City School Dist. of the City of N.Y.*, 31 Misc 3d 296, 87 AD3d 506; *Matter of LaRocca v Board of Educ. of Jericho Union Free School Dist.*, 220 AD2d 424; *S-P Drug Co. v Smith*, 96 Misc 2d 305.) III. In demanding that petitioner consent to restrictions on her free speech rights, the City imposed unconstitutional conditions on her research activities, which also violate the First Amendment's content-neutrality requirement and are devoid of the necessary procedural safeguards. (*Dolan v City of Tigard*, 512 US 374; *Perry v Sindermann*, 408 US 593; *Hannegan v Esquire, Inc.*, 327 US 146; *Board of Ed., Island Trees Union Free School Dist. No. 26 v Pico*, 457 US 853; *Coe v Town of Blooming Grove*, 567 F Supp 2d 543; *Van Arnam v General Servs. Admin.*, 332 F Supp 2d 376; *Murdock v Pennsylvania*, 319 US 105; *Invisible Empire Knights of Ku Klux Klan v City of W. Haven*, 600 F Supp 1427; *Eastern Conn. Citizens Action Group v Powers*, 723 F2d 1050; *Brooklyn Inst. of Arts & Sciences v City of New York*, 64 F Supp 2d 184.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Elizabeth I. Freedman, Leonard Koerner* and *Marilyn Richter* of counsel), for respondents. I. The courts below correctly determined that disclosure of the identifying information concerning the individuals named in the restricted series files

would constitute an unwarranted invasion of personal privacy. The privacy interests of the surviving subjects of the investigation and their relatives outweigh petitioner's interest in disclosing or publishing the names of teachers contained in the records. (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477; *Matter of Bahnken v New York City Fire Dept.*, 17 AD3d 228, 6 NY3d 701; *Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse*, 65 NY2d 294; *Matter of Johnson v New York City Police Dept.*, 257 AD3d 343, 94 NY2d 791; *Matter of De Oliveira v Wagner*, 274 AD2d 904; *Matter of Buffalo Broadcasting Co. v New York State Dept. of Correctional Servs.*, 174 AD2d 212, 79 NY2d 759; *Matter of Irwin v Onondaga County Resource Recovery Agency*, 72 AD3d 314; *Matter of Dobranski v Houper*, 154 AD2d 736; *Matter of Pennington v Clark*, 16 AD3d 1049, 5 NY3d 712; *Matter of Bellamy v New York City Police Dept.*, 87 AD3d 874.) II. The requirement that petitioner agrees not to copy, publish, disseminate or record the names and confidential identifying information in the restricted files does not violate her constitutional First Amendment rights to free speech. (*New York Pub. Interest Research Group v Carey*, 42 NY2d 527; *Mastrovincenzo v City of New York*, 435 F3d 78; *Ward v Rock Against Racism*, 491 US 781; *Members of City Council of Los Angeles v Taxpayers for Vincent*, 466 US 789; *Hill v Colorado*, 530 US 703; *Los Angeles Police Dept. v United Reporting Publishing Corp.*, 528 US 32; *Whalen v Roe*, 429 US 589; *Detroit Edison Co. v NLRB*, 440 US 301; *Nixon v Administrator of General Services*, 433 US 425; *Matter of New York State United Teachers v Brighter Choice Charter School*, 15 NY3d 560.)

*Miller Korzenik Sommers LLP*, New York City (*Itai Maytal* of counsel), *Sabin, Bermant & Gould LLP* (*Richard A. Bernstein* and *Neil M. Rosenhouse* of counsel), *David H. Tomlin* and *Karen Kaiser, Counsel for Associated Press, Leon Friedman, Counsel for Pen American Center, Polly Grunfeld Sack, General Counsel for GateHouse Media, Inc.*, Fairport, *Jonathan Donnellan* and *Ravi V. Sitwala*, New York City, *Counsel for The Hearst Corporation, George Freeman, David E. McCraw* and *Dana Green, Counsel for The New York Times Company*, for Advanced Publications, Inc. and others, amici curiae. I. The Appellate Division misread this Court's sui generis decision in *Matter of New York Times Co. v City of N.Y. Fire Dept.* (4 NY3d 477 [2005]) and overextended the "unwarranted invasion of privacy" exemption to the Freedom of Information Law. (*Matter of Tri-State Publ. Co. v City of Port Jervis*, 138 Misc 2d 147; *James v*

*Delilah Films*, 144 Misc 2d 374; *Brinkley v Casablancas*, 80 AD2d 428; *Haelan Labs., Inc. v Topps Chewing Gum, Inc.*, 202 F2d 866; *Rosemont Enters. v Random House*, 58 Misc 2d 1, 32 AD2d 892.) II. The Appellate Division erred in not recognizing as tenuous, at best, any privacy interests conceivably at stake in the anti-Communist files and in not recognizing that the overwhelming public interest in the anti-Communist files tips in favor of complete disclosure. (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557; *People v Jones*, 73 NY2d 427; *Matter of New York State United Teachers v Brighter Choice Charter School*, 15 NY3d 560; *Matter of Gould v New York City Police Dept.*, 89 NY2d 267; *Matter of M. Farbman & Sons v New York City Health & Hosps. Corp.*, 62 NY2d 75.)

## OPINION OF THE COURT

SMITH, J.

In the middle years of the twentieth century, the New York City Board of Education investigated a large number of teachers and other employees who it suspected of being present or former members of the Communist Party. The investigation included interviews with many such people, who were promised confidentiality and asked to provide the names of those who had been in the party with them.

An historian of the period now seeks disclosure under the Freedom of Information Law (FOIL) of unredacted transcripts of the interviews. We hold that she is entitled to everything in the transcripts except material that would identify informants who were promised confidentiality.

I

It seems that the Board of Education's "Anti-Communist Investigations" existed as early as 1936 and as late as 1962, but were at their most intense in the 1940s and 1950s. During that time, according to the petition in this case, an assistant corporation counsel for New York City "was assigned full-time for nearly a decade to ferret out alleged Communists and unrepentant former Communists in the New York City public school and university system." The records generated by the investigation include, according to the City, documentation of some 1,100 interviews.

According to a random sampling of the records by the City, all of the interviews included a promise of confidentiality, couched

in very similar language. The interviewer would typically begin
by saying that "there has been and will be no publicity given to
the fact that you and I are having this discussion." He would
add that the interview was "a matter of strict confidence be-
tween the Superintendent of Schools, acting through me, and
yourself." Sometimes the interviewee would ask for, and receive,
more assurance on that subject. The City points to one interview
transcript that contains several such exchanges, including the
following:

> "I know that the sins of the parents are visited upon
> their children, and it's quite a thing for my son—
>
> "Q. Well, nobody would know. This is strictly
> confidential.
>
> "A. I wouldn't want him, under any circumstance,
> to find out.
>
> "Q. No, he won't, don't you worry about that. . . .
>
> "A. . . . rather than have any repercussion on my
> son, I would—
>
> "Q. Please accept my word for it—so just don't talk
> about it any more, there will be none, because,
> believe me, you are not the first teacher we have
> spoken to under these circumstances—there have
> been a substantial number, believe me—nobody
> knows they have been here, not even their princi-
> pals; in some cases, like in your case, the members
> of their family don't know; they will never know,
> it's a closed door, so don't be concerned about it."

Petitioner is an historian with a personal reason for her inter-
est in this bit of history: Both her parents were targets of the
Anti-Communist Investigations, and her mother was among
those interviewed. Beginning in 2007, petitioner sought access
to the City's records relating to the investigations. She was
granted access to some records, but the City's Department of
Records and Information Services expressed concern that some
of the material she sought would invade the privacy of people
identified in the files. Eventually, the Department adopted a
rule, the effect of which is to require redaction of any names
and other identifying information, unless the person in ques-
tion, or his or her legal heirs or custodians, has agreed to
disclosure (*see* 49 RCNY 3-02).

As a result, petitioner has seen only redacted versions of the interview transcripts. For example, one transcript in the record on appeal contains this among many similar passages:

"Q. I see. All right. Now let's take this third group. Who were the members of this group that you recall?

"A. [lengthy redaction] this [redaction], you say, [redaction]—and that red-haired girl, [redaction].

"Q. That's [redaction]?

"A. Right."

The City offered petitioner access to unredacted files on condition "that she agree not to publish names," a condition she rejected. She brought this proceeding under article 78 of the CPLR to require the Department to disclose the files without redaction.

Supreme Court dismissed the petition (2010 NY Slip Op 33774[U] [2010]), holding that the City was entitled to redact the documents to avoid an "unwarranted invasion of personal privacy" (Public Officers Law § 87 [2] [b]), and the Appellate Division affirmed (*Matter of Harbatkin v New York City Dept. of Records & Info. Servs.*, 84 AD3d 700 [1st Dept 2011]). Petitioner appealed as of right to this Court pursuant to CPLR 5601 (b) (1), which permits such appeals "where there is directly involved the construction of the constitution of the state or of the United States," and also moved for permission to appeal pursuant to CPLR 5602 (a). We retained the appeal as of right, and refrained from deciding the motion for permission to appeal, pending oral argument.

We now conclude that petitioner's constitutional arguments lack substance, and therefore dismiss the appeal as of right. We grant the motion for permission to appeal, and modify the Appellate Division order, permitting the City to redact only names and other identifying details relating to informants who were promised confidentiality.

## II

FOIL requires government agencies to "make available for public inspection and copying all records" subject to a number of exemptions (Public Officers Law § 87 [2]). The exemption at issue in this case permits an agency to deny access to records that "if disclosed would constitute an unwarranted invasion of

personal privacy" (Public Officers Law § 87 [2] [b]). Public Officers Law § 89 (2) (b) says that "[a]n unwarranted invasion of personal privacy includes, but shall not be limited to" seven specified kinds of disclosure. In a case, like this one, where none of the seven specifications is applicable, a court "must decide whether any invasion of privacy . . . is 'unwarranted' by balancing the privacy interests at stake against the public interest in disclosure of the information" (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477, 485 [2005]).

We begin by considering the redaction of names and identifying details of people, other than the people interviewed, mentioned in the interview transcripts. We conclude that today, more than half a century after the interviews took place, the disclosure of the deleted information would not be an unwarranted invasion of personal privacy. Certainly, this was not always true. At the time of the investigations, and for some years thereafter, public knowledge that people were named as present or former Communists would have subjected them to enormous embarrassment, or worse. But that embarrassment would be much diminished today—both because the activity of which they were accused took place so long ago, and because the label "Communist" carries far less emotional power than it did in the 1950s.

We do not say that disclosure will be completely harmless to those named in the documents, if they are still alive, or to members of their families who care about their memories (*see Matter of New York Times Co.*, 4 NY3d at 484-485 [recognizing that a right of privacy exists in the affairs of the dead]). But the diminished claims of privacy must be weighed against the claims of history. The story of the Anti-Communist Investigations, like any other that is a significant part of our past, should be told as fully and as accurately as possible, and historians are better equipped to do so when they can work from uncensored records. Petitioner, or any other historian trying to trace the course of the investigations, would obviously face a serious handicap if required to work with the redacted transcript from which we quoted above.

We strike a different balance, however, when we consider petitioner's request for the names of interviewees who were promised that no one would find out they were being interviewed. We find it unacceptable for the government to break that promise, even after all these years. We quoted earlier in this opinion from the interview of a teacher who feared that her

son might learn she was being questioned about Communist activities. It is unlikely that she is still alive—the interview shows that her teaching career began in 1934 or earlier—but her son may be. The risk that he would be hurt or embarrassed by learning now of his mother's interview may be small, but a representative of New York City's government solemnly assured her that the government would not subject him to that risk. Perhaps there will be a time when the promise made to her, and to others similarly situated, is so ancient that its enforcement would be pointless, but that time is not yet.

Accordingly, the order of the Appellate Division should be modified in accordance with this opinion and, as so modified, affirmed, without costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order modified, etc.