[4 NYS3d 847]

GANNETT CO., INC., et al., Petitioners, v COUNTY OF MONROE et al., Respondents.

Supreme Court, Monroe County, January 22, 2015

899

## APPEARANCES OF COUNSEL

*Nixon Peabody LLP* (*Christopher D. Thomas* and *Meghan K. McGuire* of counsel) for petitioners.

*Merideth Smith, County Attorney* (*Matthew D. Brown* of counsel), for respondents.

## OPINION OF THE COURT

JOHN J. ARK, J.

## Preamble

Petitioner Steve Orr, a writer for petitioner Democrat & Chronicle, has documented Monroe County's use of high-speed cameras to collect the time, location and images of license plates of passing cars. This lawsuit was commenced after the petitioners' Freedom of Information Law request for stored information pertaining to certain license plates was denied by the County.

In an October 16, 2014 editorial, the Democrat & Chronicle discussed the privacy issues inherent in license plate surveillance and posited: "If lawful citizens are to be under what amounts to regular surveillance, guidelines need to be clear to all." The editorial called upon the state legislature to address the license plate readers or[1] records retention. Having analyzed the issues presented in this case, this court agrees with petitioners' contentions subject to certain concerns raised by the County. Hopefully through legislation and the thoughtful utilization of technology, the collection, use and distribution of license plate data can make our roads and communities safer while protecting our privacy. Until the legislature acts, the courts, when called upon, will address the issues.

## Nature of Proceeding

This proceeding is brought pursuant to Public Officers Law article 6 (Freedom of Information Law or FOIL) and CPLR article 78 by the Democrat & Chronicle, a newspaper owned and operated by Gannett Co., Inc., which does business in Rochester, New York and Steve Orr, a reporter for the Democrat & Chronicle, who resides in Monroe County, New York. Respondent Monroe County Sheriff's Office is a police agency serving the County of Monroe. Respondent County of Monroe is a municipal corporation responsible for administering FOIL.

The Monroe County Sheriff's Office maintains license plate records created by itself and other police agencies in Monroe County. FOIL requires every agency to make its records available to the public upon request. Petitioners made a FOIL request for certain license plate records maintained on a County-owned computer server which was denied by the respondent Monroe County Records Access Officer. Petitioners' appeal of this initial denial was again denied by respondent County of Monroe Freedom of Information Appeals Officer

---

1. Possibly should be "and."

Daniel M. DeLaus, Jr. Petitioners assert that because respondents' response to petitioners' FOIL request was inadequate in both form and substance to justify its decision to unlawfully withhold the license plate records, respondents should be compelled to disclose the license plate records. Petitioners also seek their costs and attorney's fees associated with this CPLR article 78 proceeding.

## License Plate Reader

A license plate reader (LPR) is attached to a police car, often on the trunk, and catalogs every license plate and GPS coordinate it reads as the police officer is driving on patrol or responding to calls. Through the use of license plate readers, police in Monroe County and other urban counties across New York State are collecting and archiving tens of millions of records that track vehicle movement. This local license plate information is stored in a database in Monroe County for five years so that police can look up where they have seen a specific vehicle just by knowing the license plate associated with the vehicle. Petitioners claim that as of July 2014, respondents[2] had 3,765,555 license plate records in storage and that number has increased by several thousand or more per day ever since.

When a license plate record is created, a computer can automatically compare the license plate number against a New York State Department of Motor Vehicles "Hot List," sent to the Monroe County Sheriff's Office, that contains a daily updated list of license plates belonging to sex offenders, crime suspects, fugitives, or Amber Alert subjects and/or missing persons. A "Hot List" hit alerts the deputy in the LPR car, who must verify the license plate before taking any action. Stolen or unregistered vehicles can also be identified.

Of possible greater value, if police determine that a particular vehicle was involved in a crime, they can input the vehicle's

2. Monroe County points out in its December 17, 2014 letter to this court: "There are eleven agencies in Monroe County who use license plate readers, each with different LPR policies and uses. Monroe County has agreements with several to house the data, but does not own the data . . . .
 "Thus, regarding data collected by other agencies and housed by MCSO (Sheriff), that agency would be a necessary party to any Article 78 appeal of a FOIL denial for data that agency collected . . .
 "The simpler solution is to require individuals to make their FOIL request to the agency that collected the data."

plate number into the license plate records database and try to track where it has been. Plate readers can give police a critical jump on a child abductor, information about when a vehicle left—or entered—a crime scene, and the ability to quickly identify a suspected criminal's vehicle, whether moving or stationary. Since the "reads" are recorded and retained, massive databases are created that can quickly be searched to find where a specific vehicle has been "seen," going back in time as far as the database has records.

Local police can consolidate data from multiple LPRs, both mobile (mounted on police cars) and fixed (speed and traffic light cameras or other designated locations, e.g., the airport) into a single searchable database. From a license plate number police can find every place a vehicle has been parked (if a police car has driven past a vehicle while it was parked), passed a speed camera, or moved through a monitored location. Even though police could functionally track an individual's movement and routes, most of the records created through the license plate camera program contain information about people who are not suspected of any crime.

## Facts

On July 30, 2014, petitioner Steve Orr, on behalf of himself, the Democrat & Chronicle (Orr's employer), and Gannett Co., Inc., made a FOIL request for "copies of any and all license-plate reader records" for New York plates APM 1005, DFR 2536, DLA 3983, EPF 514, FJT 2738, FML 1326, GET 5634, which plates are registered to petitioner Democrat & Chronicle employees; plate GMW 8946 which is registered to respondent County of Monroe and plate R-34165 which is registered to the City of Rochester.

In a letter dated August 27, 2014 (the FOIL determination), respondent Monroe County denied the FOIL request. However, the FOIL determination did not contain a "particularized and specific justification" for respondents' denial of petitioners' FOIL request. Instead, the FOIL determination cited Public Officers Law § 87 (2) (b) and (e) (i) and summarily concluded the license plate records were exempt:

(a) "Pursuant to Public Officers Law § 87-2 (b), requests for documents may be denied because they 'are an unwarranted invasion of personal privacy'. The requested records fall within that category" and

(b) "Pursuant to Public Officers Law § 87-2 (e) (i), records normally subject to disclosure under the Freedom of Informa-

tion Law may be exempted from disclosure 'when the records are compiled for law enforcement purposes and if disclosed could interfere with a law enforcement investigation.'"

On September 2, 2014, petitioners timely appealed respondents' denial (the appeal) to the County of Monroe's Freedom of Information Appeals Officer Daniel M. DeLaus, Jr. In their appeal, petitioners explained that the license plates listed in the FOIL request belonged to petitioner Steve Orr, six other Democrat & Chronicle employees, Monroe County, and the City of Rochester. In neither the July 30, 2014 FOIL request nor the September 2, 2014 appeal did petitioners: (a) identify all of the owners of the license plates at issue; (b) provide evidence of ownership of the license plates at issue; (c) provide written authorizations for release of private information; or (d) set forth a time frame for the requested records.

In a letter dated September 19, 2014 (the appeal determination), Mr. DeLaus denied petitioners' appeal and essentially reiterated the August 27, 2014 FOIL determination without setting forth a "particularized and specific justification" for his belief that the personal privacy and law enforcement investigation exemptions applied.

This CPLR article 78 proceeding, which was commenced on October 15, 2014 (within four months after the Freedom of Information Appeals Officer's final appeal determination) was the first time that the seven Gannett employees were identified as the owners of the vehicles bearing the requested plate records and provided written consents for the disclosure of any license plate reader records. However, reasonable proof of the identity of the owners and evidence of ownership of the license plates at issue still have not been presented.

### Legal Arguments

Petitioners posit three arguments for their requested relief:

1. respondents cannot withhold the license plate records of the seven Gannett employees under the personal privacy exemption because the affected individuals all consented to disclosure;

2. respondents cannot withhold the license plate records under the personal privacy exemption because the affected municipalities have no personal privacy rights; and

3. the law enforcement investigation exemption does not apply because respondents failed to establish disclosure poses any risk to an ongoing law enforcement investigation.

Respondents counter that:

1. LPR data is private and should be protected;

2. LPR records have great potential for misuse and should be limited to authorized use for law enforcement purposes only;

3. the driver of the County vehicle, Daniel DeLaus, Jr. has a privacy interest in the County vehicle; and

4. the law enforcement exemption applies to LPR data.

## Analysis

This court's analysis begins with a categorization of potential requests for license plate records as follows:

1. records for plates issued to an individual by that individual;

2. records for plates issued to another individual;[3] and

3. records for plates issued to a non-individual, e.g., a government or corporate vehicle.

1. Requests for records for plates issued to an individual by that individual.

■ As stated in Public Officers Law § 89 (2) (c) (ii)-(iii), "disclosure shall not be construed to constitute an unwarranted invasion of personal privacy . . . when the person to whom a record pertains consents in writing to disclosure [or] when upon presenting reasonable proof of identity, a person seeks access to records pertaining to him or her." Most certainly, it is not "an unwarranted invasion of personal privacy" when petitioner Steve Orr and six co-employees request their own license plate records. However, it was not until this article 78 proceeding that the six co-employees asserted ownership of the vehicles and consented to the disclosure of the respective license plate reader records. To date, petitioners have not given proof of personal identity and ownership of the vehicles. However, neither the original FOIL nor appeal determinations indicated any documentation shortcomings in the FOIL requests.

2. Requests for records for plates issued to another individual.

■ Since a vehicle either being driven or parked on the street occurs in public, a recorded "read" by a license plate reader is not an invasion of personal privacy. However, the cumulative

---

**3.** Although petitioners have not requested records for plates issued to another individual, the analysis is germane to the requests for records for plate GMW 8946 which is registered to respondent County of Monroe and plate R-34165 which is registered to the City of Rochester.

effect of many "reads" or bits of government (often police) collected information must be considered. This raw accumulated data can create a non-contextual "mosaic" which is essentially a high-resolution image of an individual, defined by his or her vehicle's randomly recorded movements and locations. The following troubling, but not uncommon,[4] scenario is illustrative of why access to this data should be limited.

A single mother has an order of protection against the child's father (the perpetrator) who has physically assaulted the mother and threatened to abscond with their young child. A court order of protection prohibits any unsupervised visitation with the child and no contact with the mother. The court order specifically does not disclose where the mother and child reside, where the mother works or where the child attends school. Ever fearful of violence and the abduction of her child, the mother drives her child to school, goes to work and then picks up her child from after-school care. By simply learning the mother's license plate number and accessing any available record of license plate readings, the perpetrator may have enough information to piece together the residence, place of employment and school. Although the mother's license plate "mosaic" may not mean much to an uninvolved observer, the obsessive mind of a stalking predator should not be underestimated.

Since FOIL allows limitations on access, an agency may deny access to records or portions thereof that "if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article." (Public Officers Law § 87 [2] [b].) An "unwarranted invasion of personal privacy"[5] includes: "iv. disclosure of information of a personal nature when disclosure would result in

---

4. For the five years 2009 through 2013, there have been 83,378 temporary and permanent orders of protection granted in all state and local courts in Monroe County (an average of 16,675 per year). Most orders of protection do not disclose specific locations.

5. Even though the law may allow the balancing of untoward consequences of non-consensual disclosure of license plate records and the benefits of disclosure, there may be circumstances where disclosure is warranted. Accordingly, FOIL appeals officers are given discretion, reviewable in Supreme Court per CPLR article 78.

In *Matter of Harbatkin v New York City Dept. of Records & Info. Servs.* (19 NY3d 373, 380 [2012]), the Court of Appeals sustained the denial of a FOIL request for City records related to a Board of Education's "Anti-Communist" investigation over 50 years earlier.

"FOIL requires government agencies to 'make available for public inspection and copying all records' subject to a number of

economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it" (Public Officers Law § 89 [2] [b] [iv]).

Most certainly the perpetrator being given information that would assist his discovering the residence, place of employment and school, in contravention of a court order of protection, would result in a personal hardship to the mother. Although infrequent, there is little, if any, rationale for the unfettered access to another person's license plate records to counteract the purpose of an order of protection.[6]

Consider a second scenario where access could result in economic or personal hardship to another individual. When traveling between his office and home, State Senator Smith[7] drives on a busy street where illicit drug houses are located and is frequently patrolled by police cars equipped with license plate readers. Imagine a political opponent's campaign ad five days

exemptions (Public Officers Law § 87 [2]). The exemption at issue in this case permits an agency to deny access to records that 'if disclosed would constitute an unwarranted invasion of personal privacy' . . . Public Officers Law § 89 (2) (b) says that '[a]n unwarranted invasion of personal privacy includes, but shall not be limited to' seven specified kinds of disclosure. In a case, like this one, where none of the seven specifications is applicable, a court 'must decide whether any invasion of privacy . . . is "unwarranted" by balancing the privacy interests at stake against the public interest in disclosure of the information' (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477, 485 [2005])." (*Harbatkin*, 19 NY3d at 379-380.)

6. There is precedent in New York for limiting FOIL access because of safety concerns for individuals. In *Matter of Newsday, Inc. v Sise* (71 NY2d 146 [1987]), a daily newspaper sought the names and addresses of the jurors who had been selected to sit on a highly publicized murder (mis)trial. The Commissioner of Jurors refused the requests contending that such information was outside the scope of FOIL because the information was specifically exempted from disclosure by Judiciary Law § 509 (a), which states: "[s]uch questionnaires . . . shall not be disclosed except to the county jury board or as permitted by the appellate division."

In affirming the decision of the Commissioner of Jurors, the New York Court of Appeals held:

"Recognizing that many prospective jurors would be adverse to having these details made public and that disclosure could result in harassment of jurors or attempts at retribution or intimidation, the Legislature has provided that the questionnaires be kept confidential and exempt from disclosure except upon an application made pursuant to Judiciary Law § 509 (a)." (71 NY2d at 151.)

7. Fictional name.

before his hotly contested election: "Police records obtained today show Senator Smith's car in front of a known drug house on at least twelve occasions in the past six months." The assertions are accurate, but out of context. Failure to be reelected would be both an economic and personal hardship for Senator Smith.

3. Requests for records for plates issued to a non-individual.

■ As municipalities—not natural persons—respondent County of Monroe (plate GMW 8946) and the City of Rochester (plate R-34165) have no personal privacy rights.[8] However, as stated in FOIL-AO-16051: "[T]he authority to withhold the information based upon considerations of privacy is restricted to those situations in which records contain personal information about natural persons . . . ." (Comm on Open Govt FOIL-AO-16051 [2006].) A "situation" could be the specific assignment of a corporate or government vehicle to an individual as part of his or her employment which allows for personal use. Quite simply, if the single mother above worked for the government or a corporation and was assigned a car per her employment, and the perpetrator knew the license plate of her assigned car, the order of protection would be compromised and the LPR disclosure may be "an unwarranted invasion of personal privacy."

## Summary

1. Upon providing personal identification and reasonable proof of ownership of the license plate at issue (e.g., a copy of a current vehicle registration) an individual can obtain data regarding his or her own license plate by executing a written consent to disclosure.

2. Data regarding municipal vehicle license plate readings is to be disclosed unless the municipal vehicle is specifically assigned to an individual and the municipality allows for the personal use of the vehicle by the assignee.[9]

---

**8.** Comm on Open Govt FOIL-AO-8740 (1995) ("[T]he provisions in the Freedom of Information Law pertaining to privacy are intended to deal with natural persons, rather than entities, such as corporations or other business or commercial establishments").

**9.** Of course, the assignee may attain personal privacy if the municipality allowed the assigned driver to register the vehicle in his or her name.

██ 3. Although not specifically claimed here, a law enforcement agency[10] can assert that release of particular requested license plate records "if disclosed could interfere with a law enforcement investigation," i.e., a current specific ongoing law enforcement investigation.[11]

4. Realizing that there are complications in effectuating this decision, counsel are to submit, by February 23, 2015, proposed forms[12] consistent with this decision and FOIL[13] for the release of license plate records.

5. The County is to file a certified record of the FOIL proceedings.

6. A hearing on petitioners' request for legal fees, if any, and a discussion of the proposed forms will be held on March 4, 2015 at 9:30 a.m.

**10.** Public Officers Law § 87 (2) (e) (i) excludes from the reach of a FOIL disclosure notice, those records "compiled for law enforcement purposes and which, if disclosed, would . . . interfere with law enforcement investigations or judicial proceedings."

**11.** See *Estate of Rebello v Dale* (2014 NY Slip Op 31424[U], *3 [2014]) for an analysis of the application of the Public Officers Law § 87 (2) (e) (i) "investigation" exemption.

**12.** As pointed out in respondent Monroe County's December 17, 2014 letter:

> "Some agencies use LPRs on routine patrols around neighborhoods and commercial centers or use them investigatively in targeted areas . . . Some agencies anticipate purchasing multiple newer LPR models within the next year and may change their LPR policies to match new capabilities. The County cannot know whether said agency is entitled to a specific exemption to the release of the data, such as an ongoing investigation. Therefore, said agency must be given the opportunity to respond to FOIL requests for data it collects but MCSO houses.
>
> "The simpler solution is to require individuals to make their FOIL request to the agency that collected the data."

**13.** As pointed out by petitioners, other jurisdictions make license plate records available without going through the FOIL process.