**Matter of NYP Holdings, Inc. v New York City Dept. of Social Servs.**

2024 NY Slip Op 32540(U)

July 24, 2024

Supreme Court, New York County

Docket Number: Index No. 158909/2023

Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   <u>HON. JOHN J. KELLEY</u>                    PART                      56M
                                                    *Justice*

-----------------------------------------------------------------------X

In the Matter of                                         INDEX NO.        158909/2023

NYP HOLDINGS, INC., and NOLAN HICKS,                     MOTION DATE      07/12/2024

                                   Petitioners,          MOTION SEQ. NO.       001

                    - v -

NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES              **DECISION, ORDER, AND**
and NEW YORK CITY DEPARTMENT OF HOMELESS                 **JUDGMENT**
SERVICES,

                                   Respondents.

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 42, 43, 44, 45, 46

were read on this motion to/for                    ARTICLE 78 (BODY OR OFFICER)           .

In this CPLR article 78 proceeding, the petitioners seek judicial review of the May 9, 2023 partial denial of their administrative appeal from a March 23, 2023 New York City Department of Social Services/New York City Department of Homeless Services (DSS/DHS) Records Access Officer's (RAO) determination that had denied their request for agency records pursuant to the Freedom of Information Law (Public Officers Law § 84, *et seq*.; hereinafter FOIL). The DSS/DHS answers the petition, submits the administrative record, and opposes the relief sought by the petitioners. The petition is granted, and, on or before August 26, 2024, the DSS/DHS shall produce the documents requested by the petitioners, but the petitioners are preliminarily enjoined, until September 25, 2024, from publishing the addresses of the homeless shelters that were the subject of their FOIL request, to permit the DSS/DHS to appeal this decision, order, and judgment, and seek a either a continued injunction or stay pending appeal from the Appellate Division.

[* 1]

In its initial FOIL request, dated March 15, 2023, the petitioners---the corporate owner of the New York Post newspaper and an individual reporter for that newspaper---requested that the DSS/DHS produce "[a] spreadsheet or database of shelter locations, number of beds provided, operator and landlord." In his denial, the RAO explained that,

> "[a]ddresses of individuals applying for or receiving public assistance, including DHS shelter addresses, are confidential pursuant to NYS Social Services Law (SSL) §136 and are therefore withheld under NY Public Officers Law §87(2)(a).
>
> "However, while this information cannot be provided under FOIL for the above reasons, in handling requests from representatives of bona fide news organizations the Agency will acknowledge that there is a separate entitlement to access information contained in the Agency's books and records of disbursement, including addresses, so long as the relevant statutory requirements are met. Specifically, SSL 136(1) requires the news organization to 'give assurances in writing that it will not publicly disclose, or participate or acquiesce in the public disclosure of, the names and addresses of applicants for and recipients of public assistance and care . . .' It is for these reasons the Agency requires completion of the attached agreement prior to release of the requested information, which would otherwise be exempt pursuant to NY POL §87(2)(a).
>
> "Once we receive the completed form, the Agency will work to compile responsive records and provide a response."

Rather than executing and submitting that form to the DSS/DHS, the petitioners administratively appealed that determination to the DSS/DHS's Records Access Appeal Officer (RAAO).

In a May 9, 2023 determination, the RAAO explained that Social Services Law § 136 prohibited

> "the release of 'the names *or* addresses of persons applying for or receiving public assistance.' More specifically, the statute provides that '[t]he names or addresses of persons applying for or receiving public assistance and care shall not be included in any published report or printed in any newspaper . . .' SSL §136(1) [emphasis added]. It is acknowledged that the underlying legislative intent of this section of the SSL is 'to preserve the dignity and self-respect of the recipient of social assistance and to assure the integrity and efficiency of the administration of the related programs.' *Malowsky v. D'Elia*, 160 A.D.2d 798, 800 (2d Dep't 1990) (citing *Early v. Cnty. of Nassau*, 98 A.D.2d 798, 790 (2d Dep't 1983). Courts and the Agency also recognize the law's intent to 'prevent a recipient's exposure to exploitation or embarrassment' (*People v. Prim*, 47 A.D.2d 409, 416). DHS agrees that the legislative intent behind SSL §136 is what drives this conversation. The dignity, self-respect, and additionally the safety, of our clients is of the utmost importance. The Agency's plain language reading and application of the statute support[ ] these goals."

**158909/2023  NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**                                              **Page 2 of 11**
**Motion No.  001**

[* 2]

2 of 11

The RAAO rejected the petitioners' reliance upon the decision in *Krauskopf v Giannelli* (121 Misc 2d 186, 190 [Sup Ct, N.Y. County 1983]), for the proposition that "the demand for addresses requires minimal intrusion into the confidentiality of records and cannot serve, as such, to embarrass, demean or exploit either the assistance recipient or the program administration." In this regard, the RAAO explained that *Krauskopf* involved the disclosure of the addresses of only three particular public assistance recipients in the context of a grand jury subpoena related to a homicide investigation. As the RAAO characterized it, apart from the fact that Social Services Law § 136(1), by its very terms, already contemplated grand jury disclosures, limited to the "names and addresses and the amount received by or expended for" public assistance, the *Krauskopf* court explicitly noted that the disclosures there in dispute were "not being made to the general public, but only to a small and select group, all of whose members are obligated by law to keep secret information they receive" (*Krauskopf v Giannelli*, 121 Misc 2d at 190).

In response to the petitioners' arguments that "addresses do not implicitly identify inhabitants," and that "[a]n individual receiving public benefits cannot be deduced from the existence of a shelter at a particular building," the RAAO emphatically asserted that these contentions were "not necessarily true." Specifically, she adverted that,

> "[t]he fact that an individual resides at a DHS shelter location is in itself confirmation that they are receiving public assistance and care. These addresses, for all intents and purposes, are DHS clients' 'home' addresses during the time in which they reside there. Disclosure of addresses enables third parties both to identify and locate individuals residing at the sites as recipients of public assistance, the result of which is the potential exploitation and embarrassment of Agency clients that SSL §136 aims to avoid. There is no requirement under the statute that addresses be 'tethered' to names of recipients before the statutory protections apply. In fact, as emphasized above, SSL §136 couches the language in terms of either/or: prohibiting the disclosure of names *or* addresses."

According to the RAAO, under the New York City Identifying Information Law (Admin. Code of City of N.Y., §§ 23-1201-23-1205), which is applicable to the DSS/DHS, "information obtained

**158909/2023   NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**
**Motion No.  001**

**Page 3 of 11**

3 of 11

by or on behalf of the city that may be used on its own *or with other information* to identify *or locate* an individual" (Admin. Code of City of N.Y., §§ 23-1201, ¶ 6 [emphasis added]) constitutes "identifying information" that can be disclosed only in limited circumstances, regardless of whether that individual is a recipient of DSS/DHS benefits. Hence, the RAAO, in reaching her decision, concluded that the Identifying Information Law lent further support to the applicability of Social Services Law § 136 as a basis for denying access to the records sought, and bolstered her determination also to withhold the disclosure of documents containing such addresses under Public Officers Law § 87(2)(b), so as to avoid any unwarranted invasions of personal privacy.

The RAAO further characterized, as "inaccurate," the petitioners' allegation that DSS/DHS inconsistently applied Social Services Law § 136 because it had disclosed shelter addresses in other contexts, and that the examples of disclosure cited in the petitioners' appeal letter were distinguishable from their current request to release a complete list of shelter addresses to a member of the public under FOIL. Rather, according to the RAAO, the examples cited by the petitioners did not include situations in which the addresses of homeless shelters were published in a wholesale fashion in one easily or readily searchable or widely publicized single place or document. Rather, she explained that the DSS/DHS previously had disclosed or otherwise made public DHS shelter addresses solely for purposes directly connected to the administration of public assistance and shelter programs, and to fulfill those agencies' various legal obligations related to procurement, proposed contracts, and public hearings. Hence, she concluded that, "[w]hile the Agency may be required under some circumstances to provide address information in limited forums, this does not mean that the Agency should or must shirk its duty to protect this information outside of those limited contexts to the fullest extent permitted under the law." In this regard, the RAAO noted that the Humanitarian Emergency Response and Relief Centers identified by the petitioners as having previously been identified to the public were not DHS homeless shelter sites.

**158909/2023   NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**
**Motion No.  001**

**Page 4 of 11**

4 of 11

[* 4]

Nonetheless, the RAAO granted the petitioners' administrative appeal to the extent of directing the DSS/DHS FOIL office to provide materials responsive to the portions of the petitioners' request seeking non-confidential records and data, specifically, the identities of the "operator[s] (i.e., contracted shelter providers)" and "number of beds provided." She otherwise denied the appeal on the ground that the remaining documents were exempt from disclosure by virtue of Public Officers Law § 87(2)(a) (records specifically exempted from disclosure by the Social Services Law) and Public Officers Law §87(2)(b) and §89(2) (records that, if released, would create an unwarranted invasion of personal privacy). This CPLR article 78 proceeding ensued.

"While the Legislature established a general policy of disclosure by enacting the Freedom of Information Law, it nevertheless recognized a legitimate need on the part of government to keep some matters confidential" (*Matter of Fink v Lefkowitz*, 47 NY2d 567, 571 [1979]). When denying a FOIL request, a state or municipal agency must "state, in writing, the reason for the denial of access" (*Matter of West Harlem Bus. Group v Empire State Dev. Corp.*, 13 NY3d 882, 884 [2009]). If the requesting party administratively appeals the denial, the agency's appeals officer must also provide written reasoning for upholding the denial (*see id.*).

> "[O]n the issue of whether a particular document is exempt from disclosure under the Freedom of Information Law, the oft-stated standard of review in CPLR article 78 proceedings, i.e., that the agency's determination will not be set aside unless arbitrary or capricious or without rational basis, is not applicable"

(*Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 109 AD2d 92, 94 [3rd Dept. 1985], *affd* 67 NY2d 562 [1986]; *see Matter of Prall v New York City Dept. of Corrections*, 129 AD3d 734 [2d Dept 2015]; *Matter of New York Comm. for Occupational Safety & Health v Bloomberg*, 72 AD3d 153 [1st Dept 2010]). Rather, upon judicial review of an agency's determination to deny a FOIL request, the court must assess whether "the requested material falls squarely within a FOIL exemption" and whether the agency, upon denying such access, "articulat[ed] a particularized and specific justification for denying access" (*Matter of Capital Newspapers Div.*

**158909/2023   NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**
**Motion No.  001**

**Page 5 of 11**

5 of 11

*of Hearst Corp. v Burns*, 67 NY2d at 566). In other words, the court may only review an agency's FOIL determination to ascertain whether the determination to invoke a particular statutory exemption was affected by an error of law (*see Matter of Abdur-Rashid v New York City Police Dept.*, 31 NY3d 217, 246 & n 2 [2018], *affg* 140 AD3d 419, 420-421 [1st Dept 2016]; *Matter of Asian Am. Legal Defense & Educ. Fund v New York City Police Dept.*, 125 AD3d 531, 531 [1st Dept 2015]; CPLR 7803[3]).

Under Public Officers Law § 87(2)(a), records must be withheld that "are specifically exempted from disclosure by state or federal statute." Social Services Law § 136(1) provides, in relevant part, with certain exceptions not relevant here, that,

> "[t]he names *or* addresses of persons applying for or receiving public assistance and care shall not be included in any published report or printed in any newspaper or reported at any public meeting . . . ; nor shall such names and addresses and the amount received by or expended for such persons be disclosed"

(emphasis added). That statute, however, further provides that,

> "if a bona fide news disseminating firm or organization makes a written request to the social services official or the appropriating board or body of a county, city or town to allow inspection by an authorized representative of such firm or organization of the books and records of the disbursements made by such county, city or town for public assistance and care, such requests shall be granted within five days and such firm or organization shall be considered entitled to the information contained in such books and records, *provided such firm or organization shall give assurances in writing that it will not publicly disclose, or participate or acquiesce in the public disclosure of, the names and addresses of applicants for and recipients of public assistance and care except as expressly permitted by subdivision four*."

(emphasis added). The public dissemination of such information by a news organization, made after it has provided such assurances to the applicable agency, constitutes a misdemeanor (Social Services Law § 136[1]).

The purpose of these restrictions is "to preserve the dignity and self-respect of a recipient of public assistance" (*Rampe v Giuliani*, 253 AD2d 486, 487 [2d Dept 1998]). Although the protections accorded such records are not absolute, the petitioners must show some entitlement to the information under some regulatory exception (*D & Z Holding Corp. v City of*

**158909/2023 NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**
**Motion No. 001**

**Page 6 of 11**

6 of 11

[* 6]

*N.Y. Dept. of Fin*., 179 AD2d 796, 798 [2d Dept 1992]), or demonstrate that their suppression would "exceed the purpose of the statute" (*Rampe v Giuliani*, 253 AD2d at 487). Generally, even disinterested applicants for production of agency records, such as academic researchers, may not employ FOIL to obtain records that reveal the name of public assistance benefit recipients (*see Matter of Rabinowitz v Hammons*, 228 AD2d 369, 369 [1st Dept 1996] [rejecting researcher's request for production of approximately 1,900 intake referral forms maintained by the Visiting Psychiatric Service unit of the New York State Office of Health and Mental Health Services]). As relevant to this dispute, in *Matter of Citizens for a Better Maspeth, Inc. v City of New York* (2017 NY Slip Op 32024[U], 2017 NY Misc LEXIS 3692 [Sup Ct, Queens County, Sep. 27, 2017]), the court rejeected a judicial challenge to the DHS's denial of a FOIL request, made jointly by a community organization opposed to the siting of shelters in its neighborhood and a local resident affiliated with that organization, that "specifically sought individual addresses---both the last known addresses and the current shelter location---of each New York City shelter resident." More particularly, the individual resident requested documents, among other things, containing the

> "[m]ost recent data available pertaining to the number of homeless, stratified by type (ex. families with children, adult families, single adults), data pertaining to their last residence/last known address (country, state, borough, city zip code, and community board of last residence), primary reason for homelessness, indicator if currently employed, if employed, indicator if full time or part time, gross monthly income, if any, indicator of mental health issues, indicator of drug abuse/dependency, indicator of alcohol abuse/dependency, shelter entry date, current length of shelter stay (in days), anticipated length of shelter stay, shelter provider, *shelter location (borough, city, zip code and community board of shelter location),* repeat shelter status (meaning they have returned to the shelter system after being transitioned out)"

(*id*., 2017 NY Slip Op 32024[U], *2, 2017 NY Misc LEXIS 3692, *2 [emphasis added]). In denying the entirety of the challenge, the court explicitly ruled that the petitioners were not entitled to the addresses of all current DHS shelter residents (*id*., 2017 NY Slip Op 32024[U], *9, 2017 NY Misc LEXIS 3692, *16; *cf. Matter of New York Times Co. v City of New York*, 176 Misc 2d 872 [Sup Ct, N.Y. County 1998] [newspaper publisher that agreed not to publish individual

**158909/2023  NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**
**Motion No.  001**

**Page 7 of 11**

7 of 11

names and addresses of "workfare" recipients is entitled to agency records identifying those recipients so that it could interview recipients, and anonymously report on the effects of the recently imposed work requirement for receipt of welfare benefits]).

The court concludes that the DSS/DHS incorrectly invoked the exemption articulated by Public Officers Law § 87(2)(a), and improperly withheld the requested records on the ground that they were "specifically exempted from disclosure by state . . . statute," particularly Social Services Law § 136(1). Although Social Services Law § 136(1) exempts disclosure of the name "or" address of a public benefit recipient, the request made by the petitioners here was not for the addresses of any specific recipients but, rather, for the addresses of DHS-managed *facilities.* While those facilities do serve as temporary locations of the recipients of homeless benefits and other public benefits, contrary to the DSS/DHS's contention, they are not formal "addresses" of public benefit recipients, who rarely reside therein for more than a few months, and they are neither a permanent residence nor a domicile of those receiving benefits. Moreover, the *Maspeth* decision is distinguishable from the instant dispute, in that the party requesting records there specifically sought the addresses of the recipients themselves, not the addresses of facilities in a general fashion.

It is not clear whether Admin. Code of City of N.Y., §§ 23-1201, ¶ 6, which is a section of the Administrative Code that imposes a specific duty upon City agencies, has the "force of statute" in the City and thus, whether it is a provision of the Administrative Code, similar to a statute, that is the controlling authority "within its sphere of operation" (*see Juarez v Wavecrest Mgt. Team,* 88 NY2d 628, 645 [1996]; *Bittrolff v Ho's Dev. Corp.*, 77 NY2d 896, 899 n [1991]; *Guzman v Haven Plaza Hous. Dev. Fund Co*., 69 NY2d 559, 565 n 3 [1987]; *see also Martin v Herzog*, supra, 228 NY 164, 169 [1920]). To the extent that it is deemed to have the force of statute, the same analysis that applies to Social Services Law § 136(1) applies to that Code provision, in that it prohibits the disclosure of specific identifying information but does not, by its terms, prohibit the disclosure of the location of City-operated facilities.

158909/2023   NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL
Motion No. 001

Page 8 of 11

8 of 11

Public Officers Law § 87(2)(b) provides that an "agency may deny access to records or portions thereof that . . . if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article." In general, that provision of law requires a balancing test, and warrants a finding of an "unwarranted invasion" where "privacy interests" outweigh the "public interest in disclosure of the information" (*Matter of Harbatkin v New York City Dept. of Records & Info. Servs*., 19 NY3d 373, 380 [2012]; *see Matter of New York Times Co. v City of N.Y. Fire Dept*., 4 NY3d 477, 485-487 [2005]; *Matter of Thomas v New York City Dept. of Educ*., 103 AD3d 495, 496-497 [1st Dept 2013]). In interpreting the federal Freedom of Information Act, on which FOIL is based, the United States Supreme Court explained that, where an agency asserts an exemption based on personal privacy, the "usual rule that the citizen need not offer a reason for requesting the information must be inapplicable" (*National Archives & Records Admin. v Favish*, 541 US 157, 172 [2004]). In order to "give practical meaning" to the exemption, which "requires the courts to balance the competing interests in privacy and disclosure," courts must examine whether the requestor has established a "sufficient reason for the disclosure" outweighing the privacy interests (*id.*). The Court of Appeals, in both *Harbatkin* and *New York Times*, effectively has adopted the *Favish* test, since it expressly applied such a balancing test to FOIL in the context of claimed exemptions based on privacy.

Notably, "'what constitutes an unwarranted invasion of personal privacy is measured by what would be offensive and objectionable to a reasonable person of ordinary sensibilities'" (*Matter of Hepps v New York State Dept. of Health,* 183 AD3d 283, 287-288 [3rd Dept 2020], quoting *Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police*, 218 AD2d 494, 498 [3d Dept 1996] [internal quotation marks, brackets, and citation omitted]; *see Matter of Massaro v New York State Thruway Auth*., 111 AD3d 1001, 1003 [3d Dept 2013]; *see generally Matter of Castorina v New York City Human Resources Admin./Dept. of Social Servs.,* 2019 NY Slip Op 32351[U], 2019 NY Misc LEXIS 4325 [Sup Ct, N.Y. County, Jul. 31, 2019] [rejecting

**158909/2023 NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**
**Motion No. 001**

**Page 9 of 11**

9 of 11

FOIL request by two members of the New York State Assembly for the underlying personal information required on City residents' applications for issuance of IDNYC identification cards]).

Although the court recognizes the importance of the privacy interests of recipients of public benefits who reside in homeless shelters, and their concomitant interest in freedom from potential harassment, exploitation, and embarrassment that could arise were the shelter addresses to be made public, the public has a valid interest in obtaining knowledge of where DHS homeless shelters are situated. In this regard, however, the court notes the recent incident in the Bensonhurst section of Brooklyn, in which a public protest to the siting of a homeless shelter led to the alleged assault of a New York City Police officer by a member of the New York City Council. The court expresses its fervent hope that the publication of a list of shelter locations will not lead to similar occurrences. It further recognizes that many victims of domestic abuse initially seek refuge in homeless shelters, and that the disclosure of all of the addresses at which such shelters are situated may pose an increased danger of stalking and violence. The court nonetheless concludes that the public's interest in disclosure outweighs the interest of recipients of public benefits in this case. The addresses of virtually all shelters already have been made public during the acquisition, siting, and budgeting processes, and, as the DSS/DHS explained, in those particular instances in which the agency must hold a public hearing, or in which applications for certain other governmental approvals, appropriations, and funding are publicly known, the residents of any neighborhood in which a shelter is anticipated to be sited already will have learned of the particular address of that shelter. Moreover, in a recent article, the petitioners published the general locations of other facilities providing services to recent immigrants, apparently without any perceivable backlash. Hence, the court concludes that the DSS/DHS incorrectly invoked the exemption from FOIL disclosure set forth in Public Officers Law § 87(2)(b).

Accordingly, it is,

**158909/2023   NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**
**Motion No.  001**

**Page 10 of 11**

10 of 11

ORDERED and ADJUDGED that the petition is granted, so much of the May 9, 2023 determination of the respondent's Records Access Appeals Officer as denied the petitioners' request for access to agency records is annulled, and, on or before August 26, 2024, the respondent shall produce all records responsive to the petitioners' March 15, 2023 request for the production of "[a] spreadsheet or database of shelter locations, number of beds provided, operator and landlord"; and it is further,

ORDERED that, on the court's own motion, the petitioners be, and hereby are, preliminarily enjoined, until September 25, 2024, from publishing the addresses of homeless shelters identified in the records that are produced by the respondent, to permit the respondent to appeal this decision, order, and judgment, and to seek, from the Appellate Division, First Department, any further injunctive relief or a stay pending appeal.

This constitutes the Decision, Order, and Judgment of the court.

| | |
|---|---|
| **7/24/2024** | |
| **DATE** | **JOHN J. KELLEY, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | X | GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ | SETTLE ORDER | | ☐ SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | ☐ | INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | | ☐ REFERENCE |

**158909/2023   NYP HOLDINGS, INC. ET AL vs. NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES ET AL**
**Motion No.  001**

Page 11 of 11

11 of 11

[* 11]