■ In the Matter of VINCENT M. IGNIZIO et al., Petitioners, and THERESA BARBA et al., Respondents, v CITY OF NEW YORK, Respondent, and NEW YORK CITY DEPARTMENT OF EDUCATION et al., Appellants. [925 NYS2d 664]—

In a consolidated proceeding pursuant to CPLR article 78 to review a determination of the New York City Department of

Education dated May 13, 2010, which eliminated funding for certain variances providing yellow-bus transportation to certain 7th and 8th grade students, the New York City Department of Education and Joel I. Klein appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Richmond County (Fusco, J.), entered December 7, 2010, as granted the petition, annulled the determination, and reinstated the variances.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, the determination is confirmed, the petition is denied, and the proceeding is dismissed on the merits.

Pursuant to Education Law § 3635 (1) (c), city school districts are not required to provide transportation to students; however, if they choose to do so, they must provide equal transportation to all students in "like circumstances." Pursuant to Regulations of the Chancellor of the New York City Board of Education A-801, § 2, and subject to certain distance eligibility criteria, the New York City Department of Education provides yellow-bus transportation to children in kindergarten through 6th grade, and MetroCards to children in grades 7-12. For many years, however, the New York City Department of Education has implemented "variances" from these regulations by providing yellow-bus transportation to, among others, 7th and 8th grade students in all of Staten Island and the Breezy Point neighborhood on the Rockaway peninsula in Queens.

In early 2010 the New York City Department of Education and the Office of the Chancellor (hereinafter together the DOE), due to city-wide budget cuts, were faced with the need to cut the DOE budget. The DOE's various administrative units were each charged with submitting "Proposals to Eliminate the [Budget] Gap," or "PEGs." Among the PEGs which were eventually adopted was one discontinuing the Staten Island and Breezy Point busing variances, among others, and instead offering affected students free MetroCards if they were otherwise eligible to receive them. In addition to addressing the budget gap, DOE officials believed that the elimination of these variances was an appropriate way to ensure equality in busing, as required under Education Law § 3635 (1) (c). The petitioners challenged that determination in the instant CPLR article 78 proceeding. After a hearing pursuant to CPLR 7804 (h), the Supreme Court, inter alia, granted the petition and directed the DOE to reinstate the subject variances. We reverse the judgment insofar as appealed from.

In general, "how school . . . revenues are to be expended is a discretionary matter committed by law to the judgment of the

local Board of Education" and, absent an ultra vires act or the failure to perform a required act, a decision about the allocation of scarce resources is a judgment entrusted to school officials and is "inappropriate for resolution in the judicial arena" (*Matter of Bennett v City School Dist. of New Rochelle*, 114 AD2d 58, 65 [1985]; *see James v Board of Educ. of City of N.Y.*, 42 NY2d 357, 365 [1977]; *Price v New York City Bd. of Educ.*, 51 AD3d 277, 286 [2008]; *Matter of Parent Teacher Assn. of P.S. 124M v Board of Educ. of City School Dist. of City of N.Y.*, 138 AD2d 108, 113 [1988]; *Matter of Wagschal v Board of Examiners of Bd. of Educ. of City of N.Y.*, 117 AD2d 470, 471 [1986], *affd* 69 NY2d 672 [1986]). However, while the courts have "a duty 'to defer to the Legislature in matters of policymaking, particularly in a matter so vital as education financing,' " including the Legislature's delegation, to local boards of education, of the manner in which certain education funds are to be allocated, it is also " 'the province of the Judicial branch to define, and safeguard, rights provided by the New York State Constitution, and order redress for violation of them' " (*Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14, 28 [2006], quoting *Campaign for Fiscal Equity v State of New York*, 100 NY2d 893, 925 [2003]).

Here, although the decisions facing the DOE involved "the ordering of priorities and the allocation of finite resources" (*Jiggetts v Grinker*, 75 NY2d 411, 415 [1990]) in an area entrusted to its oversight (*see* Education Law § 2554 [19]; § 2590-h [1] [d]), Education Law § 3635 indicates that judicial oversight of decisions affecting student transportation was contemplated by the Legislature. Specifically, Education Law § 3635 (1) (c) provides that a city school district is not required to provide transportation to its students, "but if provided by such district . . . , such transportation shall be offered equally to all such children in like circumstances."

In *Pratt v Robinson* (39 NY2d 554 [1976]), the Court of Appeals construed Education Law § 3635 (1) (c) and, in that context, entertained a challenge to, inter alia, the adequacy of a city school district's busing scheme. In so doing, the Court indicated that such a challenge is a proper subject for judicial oversight, notwithstanding the broad discretion entrusted to educational officials in making decisions regarding student transportation (*see Pratt v Robinson*, 39 NY2d at 559; *see also Matter of Hatch v Board of Educ., Ithaca City School Dist.*, 81 AD2d 717 [1981]; *Finkel v New York City Bd. of Ed.*, 474 F Supp 468, 471-472 [1979], *affd* 622 F2d 573 [1980]). As in *Pratt v Robinson* (39 NY2d 554 [1976]), the gravamen of the petition-

ers' claim here is that, as a result of the elimination of the variances, the DOE's busing scheme was inadequate. Following the Court of Appeals' assessment in *Pratt v Robinson* (39 NY2d 554 [1976]), therefore, the Supreme Court correctly found that this controversy was justiciable.

"Generally, in a CPLR article 78 proceeding, [courts] examine whether the action taken by the agency has a rational basis" and will overturn that action only "where it is 'taken without sound basis in reason' or 'regard to the facts' " (*Matter of Wooley v New York State Dept. of Correctional Servs.*, 15 NY3d 275, 280 [2010], quoting *Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]; *see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 232 [1974]) or where it is "arbitrary and capricious" (*Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County*, 70 AD3d 1037, 1038 [2010]; *Matter of Wagschal v Board of Examiners of Bd. of Educ. of City of N.Y.*, 117 AD2d 470, 471 [1986]). "It is not the province of the courts to second-guess thoughtful agency decisionmaking and, accordingly, an agency decision should be annulled only if it is arbitrary, capricious or unsupported by the evidence" (*Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 232 [2007]). Thus, " '[w]hile judicial review must be meaningful, the courts may not substitute their judgment for that of the agency for it is not their role to "weigh the desirability of any action or [to] choose among alternatives" ' " (*id.* at 232, quoting *Akpan v Koch*, 75 NY2d 561, 570 [1990]; *see Matter of El Camino Trucking Corp. v Martinez*, 21 AD3d 491 [2005]).

Here, the DOE articulated two bases for its decision to rescind the Staten Island and Breezy Point variances: the need to cut the budget for transportation and the desire to achieve greater equity in busing across the City. Both of these goals are consistent with statutory mandates (*see* Education Law § 2590-h [16-a]; § 3635 [1] [c]). Although one might rationally question both the wisdom of the approach that the DOE took in meeting these goals and whether the policies adopted reasonably achieved these goals, "[i]t is beyond the power of this court . . . to determine whether the State's funds appropriated to respondent for education . . . have been wisely directed or reasonably applied, or whether its budget was fairly divided in terms of priority of needs between competing educational interests in the community" (*Matter of Bennett v City School Dist. of New Rochelle*, 114 AD2d at 65; *see James v Board of Educ. of City of N.Y.*, 42 NY2d at 365; *Matter of New York City School Bds. Assn.*

*v Board of Educ. of City School Dist. of City of N.Y.*, 39 NY2d
111, 121 [1976]; *Matter of Wagschal v Board of Examiners of
Bd. of Educ. of City of N.Y.*, 117 AD2d at 471).

Similarly, while the petitioners' appeal to safety is compelling,
the Court of Appeals has made clear that a school district's
obligation to provide transportation equally, if at all, "does not
refer to any obligation to consider the relative hazards in the
paths of different children" (*Pratt v Robinson*, 39 NY2d at 559).
Education Law § 3635 (1) (c), therefore, "furnishes no basis
upon which to posit a duty on the part of the school district to
bus [a child] closer to [his or] her home solely in order to avoid
a hazard" (*Pratt* at 559).

The petitioners rely heavily on the Regulations of the
Chancellor of the New York City Board of Education A-801,
§ 2.3, which provide, in relevant part, that "[i]n a small number
of cases where public transit facilities are inadequate or un-
available, exceptions may be granted by the Office of Pupil
Transportation to allow the use of existing contract bus service
provided for children in elementary grades by pupils in grades 7
and 8." However, while this regulation states that variances
"may" be granted, the term "may" is permissive (*see Matter of
General Elec. Capital Corp. v New York State Div. of Tax Ap-
peals, Tax Appeals Trib.*, 2 NY3d 249, 255 n 1 [2004]); thus, the
regulation does not require that variances be granted. Given
the deference due to an agency's interpretation of its own
regulations (*see Matter of Peckham v Calogero*, 12 NY3d at 431;
*Matter of Deerpark Farms, LLC v Agricultural & Farmland
Protection Bd. of Orange County*, 70 AD3d at 1038), this Court
must assume that the DOE is permitted to discontinue or deny
variances and to determine under what circumstances, if any,
variances will be granted. Because the DOE's decision to
interpret this regulation more strictly than it has in the past is
not "unreasonable," or "irrational, arbitrary, or capricious"
(*Matter of Cedar Manor Nursing Home v Novello*, 63 AD3d 833,
834 [2009]) and does not " 'conflict[ ] with the plain meaning of
the promulgated language' " (*East Acupuncture, P.C. v Allstate
Ins. Co.*, 61 AD3d 202, 209 [2009], quoting *Matter of Visiting
Nurse Serv. of N.Y. Home Care v New York State Dept. of Health*,
5 NY3d 499, 506 [2005]), this Court will not disturb the DOE's
determination.

In light of our determination, we need not reach the parties'
remaining contentions. Prudenti, P.J., Eng, Hall and Lott, JJ.,
concur.