OPINION OF THE COURT
Philip G. Minardo, J.
On November 19, 1863, in Gettysburg, Pennsylvania, President Abraham Lincoln declared:
“But, in a larger sense, we can not dedicate—we can not consecrate—we can not hallow—this ground. The brave men, living and dead, who struggled here, have consecrated it, far above our poor power to add or detract. The world will little note, nor long remember what we say here, but it can never forget what they did here. It is for us the living, rather, to be dedicated here to the unfinished work which they who fought here have thus far so nobly advanced. It is rather for us to be here dedicated to the great task remaining before us— that from these honored dead we take increased devotion to that cause for which they gave the last full measure of devotion—that we here highly resolve that these dead shall not have died in vain—that this nation, under God, shall have a new birth of freedom—and that government of the people, by the people, for the people, shall not perish from the earth.” (President Abraham Lincoln, Gettysburg Address, Bliss Copy, Library of Congress.)
Commanding words from a President who envisioned the rebirth of the democracy that laid splintered before him. President Lincoln nobly proclaimed that few would note his words that day, yet it would not be forgotten what the men who battled the Civil War had achieved.
Counsel for petitioner attempted to link the requests before this court to President Lincoln’s bold proclamation of self-government. This court does not agree with the reference.
The issues before this court are narrow and identifiable, and do not threaten the stability of the Union as a whole, as may have been argued. Essentially, this court must determine: (1) whether the petitioners have standing to request a declaratory judgment and writ of prohibition regarding certain application materials retained by the respondents in connection with the New York City Identity Card program (the IDNYC program); (2) whether Public Officers Law, article 6, §§ 84-90, otherwise *415 known as New York State’s Freedom of Information Law (FOIL), allows disclosure of certain personally identifying information when held by a government agency in New York State; and (3) whether the respondents have preempted Public Officers Law, article 6, §§ 84-90, New York City Charter § 1133, or Arts and Cultural Affairs Law § 57.13, when deciding to destroy retained IDNYC materials, and no longer retain future underlying application materials.
Background
1. Procedural History
On December 5, 2016, petitioners Ronald Castorina, Jr., and Nicole Malliotakis filed this CPLR article 78 proceeding by order to show cause with request for a temporary restraining order.
Petitioners are members of the New York State Assembly bringing this article 78 proceeding under Public Officers Law §§ 84-90, the Freedom of Information Law or FOIL, and Civil Practice Law and Rules § 3001, in their personal and professional capacities.
Fundamentally, petitioners claim that respondents’ destruction of application materials connected with the IDNYC program, enabled under Administrative Code of the City of New York § 3-115 (e), is in contravention of the New York State FOIL and such action exceeds respondents’ jurisdiction as public officers.
Unsurprisingly, petitioners’ first cause of action seeks a prohibition under CPLR 7803 (2) restricting respondents from exceeding their jurisdiction and destroying the application materials collected for the IDNYC program in response to a federal election.
Petitioners’ second cause of action seeks a declaratory judgment action that 68 RCNY 6-11 and Administrative Code § 3-115 (e) violate the purpose of FOIL in granting transparency to government programs, and therefore, enforcement of those sections in contravention of FOIL should be denied.
On December 5, 2016, at the request of petitioners with good cause shown, this court issued a temporary restraining order which provided that pending the return date of the motion, respondents were enjoined and precluded from the destruction of any and all application materials associated with the IDNYC program.
*416 Respondents then appealed that order to the Appellate Division, Second Department. The Appellate Division, Second Department granted the application to the extent that the return date was advanced to December 21, 2016.
Respondent City of New York filed an answer on or about December 16, 2016 denying each allegation and stating the following defenses:
Petitioners fail to state a claim upon which relief can be granted;
The provisions of the IDNYC law concerning the disposition of records does not violate or otherwise conflict with FOIL;
Respondents have fully complied with their statutory obligations;
The records subject to this proceeding are exempt from disclosure under Public Officers Law § 87 (2) (b) because disclosure of such records would constitute an unwarranted invasion of personal privacy;
The records that are subject to this proceeding are exempted from disclosure pursuant to Public Officers Law § 89 (2) (b) (iv) because they contain “information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it”;
The records that are subject to this proceeding are exempted from disclosure pursuant to Public Officers Law § 89 (2) (b) (v) because they contain “information of a personal nature reported in confidence . . . and not relevant to the . . . work of [the agency requesting or maintaining it]”;
The records that are subject to this proceeding are exempted from disclosure pursuant to Public Officers Law § 87 (2) (f) because disclosure could endanger the life or safety of numerous individuals; and
The records that are subject to this proceeding are exempted from disclosure pursuant to federal and/or state law.
Petitioners also filed a second order to show cause and request for temporary restraining order on December 20, 2016, requesting leave to amend and supplement the verified petition dated December 5, 2016. Such order to show cause was declined at that time by this court.
On December 21, 2016, this court held a hearing with regard to the December 5, 2016 order to show cause. After argument, this court determined that a hearing on the issues was neces *417 sary pursuant to CPLR 7804 (h). (Ignizio v City of New York, 29 Misc 3d 1231 [A], 2010 NY Slip Op 52106[U] [Sup Ct, Richmond County 2010], revd on separate issue 85 AD3d 1171 [2d Dept 2011].)
On January 5, 2017, a hearing on the issues was held and the City of New York presented Nisha Agarwal, the Commissioner of Immigrant Affairs in the City of New York, Steven Banks, the Commissioner of the New York City Human Resources Administration and the Department of Social Services, the IDNYC program administering agency, and John Miller, the Deputy Commissioner for Intelligence and Counterterrorism of the New York City Police Department (NYPD). Petitioners themselves also testified.
The matter was then adjourned until January 18, 2017, when petitioners presented John Burnett, as an expert in financial services, and Sergeant Edward Mullins, the president of the New York City Police Department Sergeants’ Benevolent Association, on the issue of security and policing.
The parties were granted permission to submit post-hearing memorandum by February 1, 2017, and the matter was fully submitted on that date.
2. Factual Background
IDNYC History
On July 10, 2014, Mayor de Blasio signed into law, Administrative Code § 3-115, which established the IDNYC program. The IDNYC program allows any city resident over the age of 14 years old to apply for a city resident identification card, regardless of immigration status. The card was intended to allow cardholders to access city services and use the card for identification purposes, such as opening a bank account. It was not intended to be used to board a plane, cross a border or rent a car. (Hearing tr at 6, 125.)
By NY City Executive Order No. 6 of 2014, Mayor de Blasio designated the New York City Human Resources Administration (HRA) to administer the IDNYC program. In order to begin administration of the program, HRA promulgated chapter 6 of title 68 of the Rules of the City of New York. To obtain an IDNYC card the applicant must execute an application, apply in person at an enrollment center, and present proof of identity and proof of residency within the City of New York. (Administrative Code § 3-115 [d] [1], [2]; [f] [1]; Samman aff ¶ 6.)
The enrollment center then reviews the identity and residency requirements and the documents presented by the ap *418 plicant to evidence each. The staff evaluates the application information against the documents presented for accuracy using several electronic document authentication tools and duplicate photo checks to prevent multiple applications and potential fraud. (Samman aff ¶¶ 6-11.) Acceptable documents include driver’s licenses, passports, utility bills and similar. (Administrative Code § 3-115 [d]; 68 RCNY 6-04—6-06.) The method of authentication for the IDNYC cards issued was developed in conjunction with the New York City Police Department. (Hearing tr at 114-116.)
The integrity unit of the IDNYC program may also further investigate the application by calling the applicant’s residence or other contacts to verify the applicant’s identity and/or residence. Once the application satisfies the integrity unit review, the IDNYC card is mailed to the cardholder and is valid for five years. (Samman aff ¶ 12.)
Administrative Code § 3-115 (e) (1) provided that New York City would retain copies of records submitted by applicants to establish proof of identity and residency for two years. During retention, any information collected concerning the applicants would be treated as confidential “[t]o the maximum extent allowed by . . . federal and state law.” (Administrative Code § 3-115 [e] [4].)
Further, Administrative Code § 3-115 provided that on or before December 31, 2016, if the administering agency, designated to be HRA, determined that there was no continuing need to retain records provided by applicants, or if the administering agency failed to make any determination with regard to said continuing need by December 31, 2016, then New York City would destroy such records by December 31, 2016. (Administrative Code § 3-115 [e] [5].)
There has been over one million IDNYC applications received, of those, just less than one million IDNYC cards were issued, with only 1% to 2% of submitted applications denied. (Hearing tr at 15-18.)
On December 7, 2016, Commissioner Banks of HRA determined that there was no need to maintain the application materials with regard to the IDNYC program, thereby allowing for their destruction.
FOIL Requests
On November 29, 2016 and December 2, 2016, respectively, petitioners Castorina and Malliotakis each filed a FOIL request *419 with the City of New York, through NYC.gov. (Petition exhibits F-G.) Petitioners requested the production of all scanned application materials maintained by any city agency with regard to the IDNYC program. As of the date of the filing of the order to show cause, neither the City of New York, nor the Human Resources Administration had responded to the requests.
However, by emails dated December 7, 2016, HRA denied the FOIL requests declaring that the requested information was subject to the FOIL exemptions in Public Officers Law §§ 89 (2) (b) (iv), the personal information exemption; 89 (2) (b) (v), the reported in confidence exemption; 87 (2) (b), the personal privacy exemption; and 87 (2) (f), the endangerment exemption. (Answer exhibit 9; Calhoun aff ¶¶ 12, 13.)
Martha Calhoun, HRA’s FOIL Appeals Officer, denied petitioners’ administrative FOIL appeals by letter dated January 13, 2017.* (Affirmation of Aaron Bloom in support of respondent’s answer, exhibit E.)
3. Hearing Testimony, in Order of Testimony
a. Commissioner Nisha Agarwal
Commissioner Nisha Agarwal is the Commissioner for Immigrant Affairs within the City of New York. The Commissioner was quite familiar with the IDNYC program and explained that the IDNYC card was designed for all city residents. Specifically, the IDNYC program was intended to assist vulnerable populations, including homeless, victims of domestic violence and undocumented immigrants.
She testified that the IDNYC program uses a complex system of identification, allotting a point system to verify eligibility, although there is no criminal investigation of the application. To obtain an IDNYC card, three points are needed to establish identity and one point to establish residency.
If fraud in the application process is suspected, HRA will deny the card and notify the potential victim if possible. Commissioner Agarwal testified to 102 known cases of fraud in the application process.
The IDNYC program promises applicants that application documentation will be kept confidential to the fullest extent possible. As such, Commissioner Agarwal testified that application documentation had only been released in full in response to a proper criminal subpoena.
*420 Under the initial implementation of the IDNYC program, the application documentation was to be retained for two years. This material could include photographs, driver’s licenses, emergency contacts, date of birth, etc. Prior to December 31, 2016, the administering agency, designated as HRA, was to determine if continued retention of the application materials was required. If HRA determined that the application documentation was to be destroyed, the application itself and photograph would be preserved.
b. Commissioner Steven Banks
Commissioner Steven Banks is the head of the joint agencies which encompass the New York City Human Resources Administration, Department of Social Services and Department of Homeless Services. Pursuant to an executive order, HRA was designated the administering agency for the IDNYC program. HRA was chosen due to the agency’s “expertise” in its evaluation of documentation and investigation.
Commissioner Banks testified that over one million applications had been received by HRA, and of those, less than one million IDNYC cards had been issued. He also testified that application documentation had only been released pursuant to subpoena and litigation. He further testified that not all those requests had been granted, since some subpoenas had been rejected.
Commissioner Banks testified that IDNYC applications were reviewed by HRA investigators, and those investigators used TSA standards to ensure accuracy.
c. Deputy Commissioner John Miller
Deputy Commissioner John Miller is the Deputy Commissioner of Intelligence for the NYPD. Deputy Commissioner Miller testified that the NYPD was consulted and involved in a series of meetings with HRA and Social Services regarding the adequate forms of IDNYC identification and the verification process.
The Deputy Commissioner testified that over the two-year period, the issue of retention was reviewed and as the deadline approached, there was no security issue requiring retention. In fact, the Deputy Commissioner testified that retention of the application documentation was considered a greater security risk, since he testified that it was apparent that any network could be hacked, including that of the City of New York. Deputy Commissioner Miller testified that he could not recall the *421 policy reasons for the two-year period, yet he did recall that the NYPD initially requested all documents be retained, yet subsequent negotiations shrunk that to the two-year period.
He also testified that although the New York State Department of Motor Vehicles needed to meet the Homeland Security standards, the IDNYC program does not, since it is not to be used for travel. Deputy Commissioner Miller testified that although the IDNYC card could be used to open bank accounts, this was not a concern when discussing retention. He explained that if terrorists opened bank accounts with the IDNYC card, it would be helpful in a criminal investigation.
d. Petitioner Ronald Castorina, Jr.
Petitioner is a member of the New York State Assembly, 62nd Assembly District in the County of Richmond, New York and a member of the Assembly Banking Committee.
Petitioner Castorina testified that he brought this action out of concern for security and the use of the IDNYC card to open bank accounts. He testified that he was worried that terrorists would be able to use the IDNYC as something similar to a driver’s license and the loss of records retention would limit the ability to investigate the cardholder and their application.
Petitioner Castorina testified that the IDNYC card does not delineate in bright-line that the card may not be used for travel, and such nonuse would only be known if someone knew the limits of the enabling law. He testified that the IDNYC card looks similar to a New York State driver’s license and could be easily confused with it and used to obtain other legal identification.
Petitioner Castorina filed his FOIL request in November and filed an additional request in December 2016, seeking all documents underlying applications for IDNYC cards. He expected that his request would be returned with all underlying application documents in redacted form and realized that this request may encompass millions of pieces of paper. Petitioner testified that he was seeking information regarding the category of identification used to grant the IDNYC applications, including how many expired passports were used to apply. In his testimony, he cited security concerns over the proliferation of the use of forged and expired passports as identification.,
e. Petitioner Nicole Malliotakis
Petitioner is a member of the New York State Assembly in the County of Richmond, New York and a member of the Assembly’s Banking Committee.
*422 Petitioner Malliotakis also filed two FOIL requests for all backup documentation regarding the IDNYC card application. Petitioner was aware that some material would be exempted, but expected the FOIL exemptions to be construed narrowly and would allow her a redacted set of the underlying IDNYC application documents in return.
As a member of the Banking Committee, she testified that she was concerned that the IDNYC card could be used to open bank accounts. Further, she testified that the comments by the Mayor and Council Speaker, regarding the destruction of the underlying IDNYC application documents, were in response to the recent presidential election, and cause for additional concern regarding the motive for destruction.
f. John L, Burnett
John L. Burnett works in financial services and writes for the Huffington Post. Petitioners brought this witness as a financial expert. He testified that the IDNYC card could be used to open bank accounts, but such use could not supersede federal law. He testified that there was a concern that the City of New York could leverage those institutions that do business with the City of New York to use the IDNYC card as identification. Further, the letter of the Superintendent of the New York State Department of Financial Services, dated September 1, 2016, which provides guidance on the use of the IDNYC card as proof of identity for the use in opening bank accounts could enhance such leverage. (Verified petition, exhibit A.)
In his testimony, he explained that to open a bank account, each institution must use acceptable identification and that driver’s licenses are traditionally used because of the diligence in the application process. The IDNYC card did not use the same verification process as the Department of Motor Vehicles, and therefore was not as reliable. Specifically, he noted that the card could be issued to a city resident who was a transient resident in a homeless shelter, since limited residency identification was required. However, he did testify that the use of the IDNYC card was not mandatory, and a financial institution could also choose not to accept it.
g. Sergeant Edward Mullins
Edward Mullins is a Sergeant with the New York City Police Department and president of the Sergeant’s Benevolent Association. Petitioners brought this witness as an expert in security.
*423 Sgt. Mullins testified that the respondents’ decision not to retain backup documentation limits the ability of the police to investigate criminal matters. He explained that more information is always preferable than less, particularly in matters involving undocumented immigrants. In those cases, the underlying application documentation could assist law enforcement in locating a suspect by tracing previous addresses or family, which could be found in birth certificates, passports, or residency documents.
Sgt. Mullins further testified that he was embarrassed by the comments of Deputy Commissioner Miller that the City of New York was electronically vulnerable to hackers. He found it curious that the Deputy Commissioner appeared concerned with the security of IDNYC applicants, but not the 400,000 New York City employees who have their paychecks electronically deposited in bank accounts and the various benefit compensation programs run by the City of New York with electronic transfers. Personal information for these employees and benefit recipients are held by the City of New York, yet, the Deputy Commissioner showed little concern that such documentation will be accessed inappropriately by hackers.
Public safety was at risk, Sgt. Mullins further explained. Criminal investigations were at risk. He testified that destruction of the documents allowed a presumption of guilt on behalf of those who applied for the IDNYC card. He pondered what other concerns the City of New York might have to destroy the documentation.
Sgt. Mullins did testify that the documentation should only be accessed for criminal matters.
Conclusions of Law
1. Venue
This court previously decided that venue in Richmond County was proper pursuant to CPLR 506 (b) and 7804 (b). Petitioners submitted their FOIL requests from their district offices in Richmond County, the IDNYC program is active in all five boroughs including the borough of Staten Island, and respondents are public officers which represent petitioners in the County of Richmond.
2. Standing
Petitioners allege injury to their rights to an open government under the Public Officers Law § 84 which states:
*424 “§ 84. Legislative declaration
“The legislature hereby finds that a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government.
“As state and local government services increase and public problems become more sophisticated and complex and therefore harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible.
“The people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.
“The legislature therefore declares that government is the public’s business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article.”
Petitioners allege that denial of their FOIL requests is hostile to the intent of this legislation as well as New York City Charter § 1133 (b) which requires:
“No records shall be destroyed or otherwise disposed of by an agency, officer or employee of the city unless approval has been obtained from the commissioner of records and information services, the corporation counsel and the head of the agency which created or has jurisdiction over the records who shall base their determinations on the potential administrative, fiscal, legal, research or historical value of the record.”
Petitioners further allege that their interest in the IDNYC application material is enhanced by their positions on the New York State Assembly Banking Committee, and the letter of the Superintendent of the New York State Department of Financial Services, dated September 1, 2016, which provides guidance to *425 the president of the New York Bankers Association and the New York Credit Union Association on the use of the IDNYC card as proof of identity for the use in opening bank accounts. (Verified petition, exhibit A.)
Petitioners argue that as members of the Assembly of the State of New York, and members of the NYS Assembly Banking Committee, the FOIL requested documents are necessary to carry out legitimate governmental and public interests, but did not clarify further.
In order to seek judicial relief, a party must show standing by showing “injury in fact” within the zone of interest protected by the relevant statutes. (Urban Justice Ctr. v Pataki, 38 AD3d 20, 25 [1st Dept 2006], appeal dismissed and lv denied 8 NY3d 958 [2007]; Society of Plastics Indus. v County of Suffolk, 77 NY2d 761 [1991].)
Petitioners challenge the decision of these respondents to not retain underlying IDNYC application materials. It is alleged that this action undermines a state mandate that such documents be preserved. However, raising that issue is not in itself an injury. Petitioners cannot simply raise a grievance on behalf of society, they must show a nexus to their rights and harm by the decision. (Urban Justice Ctr. at 27.)
If this court were to allow petitioners to challenge the actions of this administration without an allegation of an injury, petitioners’ assertions would be little “more than an attempt to legislate through the courts” (Rudder v Pataki, 93 NY2d 273, 280 [1999], citing Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579 [1998]; Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433-434 [1990]).
Standing is a limit on the power of the courts to interfere with those considerations of the elected branches of government. In Allen v Wright, Justice O’Connor explained that
“[s]tanding doctrine embraces several judicially self-imposed limits on the exercise of . . . jurisdiction, such as the general prohibition on a litigant’s raising another person’s legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff’s complaint fall within the zone of interests protected by the law invoked. The requirement of standing, however, has a core component derived directly *426 from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant’s allegedly unlawful conduct and likely to be redressed by the requested relief” (468 US 737, 751 [1984] [citations omitted]).
This court recognizes that those initiating the action or dispute should be allowed access to the court for a legal determination of the relevant dispute. (Society of Plastics Indus.) The court contemplates that deciding this threshold issue denies the parties the right to the determination of the claim by a court of law. However, issues of public concern are not enough to permit a party access to the courts, when the issues do not cause harm or injury to the petitioner. (Society of Plastics Indus.)
After a thorough review of the submitted papers, in addition to the testimony elicited over two hearing days, the court concludes that petitioners do not have standing to challenge the jurisdiction of the respondents and the IDNYC enabling law as requested. Petitioners only possess the right to challenge the denial of their FOIL request, as it was denied by HRA and the City of New York, as that denial of the FOIL request and failure to produce the underlying application materials may be considered an injury.
As explained infra, the statute and administrative codes at issue do not present a distinct path by which petitioners may challenge the actions of respondents. Principally, Public Officers Law § 84 is a “legislative declaration” that “access” to government documents be enabled, yet it does not enact a directive. (Thompson v Wallin, 301 NY 476, 493 [1950].) Without a concrete directive, petitioners have nothing further than a promise of access, without definition, not a right to retention. Additionally, petitioners’ right to request the underlying application documentation under FOIL does not grant them any additional platform to challenge the enactment and implementation of the IDNYC enabling law.
3. Public Officers Law Article 6
Article 6 of the Public Officers Law, §§ 84-90, or FOIL, allows the public to request government documents and records from any agency located within the State of New York. (Matter of Newsday, Inc. v State Dept, of Transp., 5 NY3d 84 [2005]; Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979].) FOIL is not an absolute right to receive the documents, only a right to request. The purpose is to open government and its decision- *427 making to the public, and allow the public to make informed decisions with respect to government activities. (Matter of New York State United Teachers v Brighter Choice Charter School, 15 NY3d 560, 564 [2010]; Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]; Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007]; Matter of Markowitz v Serio, 11 NY3d 43, 51 [2008]; Matter of Weston v Sloan, 84 NY2d 462, 466 [1994]; Matter of Buffalo News v Buffalo Enter. Dev. Corp., 84 NY2d 488, 492 [1994] [holding that “FOIL was enacted to provide the People with the means to access governmental records, to assure accountability and to thwart secrecy”].)
A FOIL request for disclosure is subject to 10 distinct exemptions that can be found within Public Officers Law § 87 (2). (Matter of Whitfield v Bailey, 80 AD3d 417 [1st Dept 2011].) FOIL is to be applied liberally and the exemptions are to be read narrowly. {Matter of Buffalo News v Buffalo Enter. Dev. Corp., 84 NY2d 488 [1994]; Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d 410 [1995].)
Unsurprisingly, when a FOIL request is denied, the agency seeking to prevent disclosure carries the burden of demonstrating that the requested material fits within the FOIL exemption stated for denial. (Data Tree, LLC, 9 NY3d at 463; Matter of John H. v Goord, 27 AD3d 798 [3d Dept 2006].) Moreover, when only a portion of a document is properly exempt, the agency must produce a redacted version that discloses all the nonexempt information. {Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills, 18 NY3d 42, 45-46 [2011]; Data Tree, LLC.)
Of the exemptions within the Public Officers Law, the following were invoked with regard to the FOIL requests herein: section 89 (2) (b) (iv) which exempts from disclosure “information of a personal nature when disclosure would result in economic or personal hardship of the subject party and such information is not relevant to the work of the agency requesting or maintaining it”; section 89 (2) (b) (v) which exempts “information of a personal nature reported in confidence . . . and not relevant to the . . . work of [the agency requesting or maintaining it]”; section 87 (2) (b) which exempts disclosure which would constitute an “unwarranted invasion of personal privacy”; and section 87 (2) (f) which allows the withholding of material which “could endanger the life or safety of any person.”
*428 The three former exemptions are applicable to the information at issue, namely, personally identifying documentation such as passports, birth certificates, driver’s licenses, etc. This type of information, if released, allows the recipient information which could allow impersonation of the applicant, and access to the applicant’s economic or personal information. As such, the exemptions under sections 89 (2) (b) (iv), (v); 87 (2) (b), apply to any personally identifying information within the scanned application materials, and as such that particular information is exempted from petitioners’ request.
On the other hand, the exemption under section 87 (2) (f), endangerment of the life or safety of any person, is not as clear and its application appears limited. This exception may not be applied simply because there is speculation that harm may result, as in Matter of Grabell v New York City Police Dept. (47 Misc 3d 203 [Sup Ct, NY County 2014], affd as mod 139 AD3d 477 [2016]), or where no threat can be shown as in Matter of Laveck v Village Bd. of Trustees of the Vil. of Lansing (145 AD3d 1168 [3d Dept 2016]), where personally identifying information of participants in a deer management program was dis-closable. However, since the personally identifying information within the scanned application material is exempted under the former sections, the court need not apply this exemption to the material.
The question becomes, what then did the petitioners request and what are they entitled to. Petitioners requested the underlying scanned application materials for the IDNYC program. Petitioners cite their positions within the New York State Assembly and the Banking Commission and their need to carry out their constitutional duties as the reason for disclosure of these documents.
There is no general requirement that the requester present a need or purpose to request disclosure under FOIL. (Matter of City of Newark v Law Dept. of City of N.Y., 305 AD2d 28 [1st Dept 2003].) The documents could be sought for litigation or for no reason at all. (Matter of Johnson v New York City Police Dept., 257 AD2d 343 [1st Dept 1999], lv dismissed 94 NY2d 791 [1999].) Documents are thus disclosable unless the exemptions under FOIL prevent such complete disclosure. (Matter of DJL Rest. Corp. v Department of Bldgs, of City of N.Y., 273 AD2d 167 [1st Dept 2000].) Such is the case here, where the material must be redacted pursuant to sections 89 (2) (b) (iv), (v); 87 (2) (b). (Matter of Prall v New York City Dept, of Corn, 129 AD3d 734 [2d Dept 2015].)
*429 At first blush, this type of production appears burdensome considering the FOIL privacy exceptions and the need for redaction. Nevertheless, the burden of redaction does not prevent disclosure, it may simply just delay it.
Significantly, in the matter herein, petitioners do not challenge the applicability of the exemptions. In fact, petitioners have been clear that their expectation was a redacted response to their FOIL requests, which would protect the IDNYC participant’s personal information. (Petition ¶ 35.) At no time, did petitioners contend that the application materials requested should be provided unaltered.
Therefore, if strictly interpreted under the Public Officers Law article 6, petitioners would be entitled, or have a right, to the redacted copies of the application material requested in their FOIL requests of November 29, 2016 and December 2, 2016.
In opposition to the production, respondents argue that redaction of this magnitude would require significant work-hours, and could not be achieved without “unreasonable difficulty.” {Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills, 18 NY3d 42, 45 [2011].) Such redaction of all personally identifying information under the Public Officers Law privacy exemptions in sections 89 (2); 87 (2) (b) would require actual review and exclusion of dates of birth, Social Security numbers, and similar, and the possible interpretation of other foreign documents. This type of redaction would require two reviews without automated assistance and respondents have placed the cost of such redaction at more than six million dollars. (Libster aff ¶¶ 7-12.)
In their post-hearing memorandum, respondents additionally argued that they could not guarantee the privacy and safety of the applicants’ information even after redaction since human error in the redaction and possible accidental release of sensitive information could not be promised.
Finally, respondents argued that the usefulness of such heavily redacted documents is nil. Although no specific need is required under FOIL, a commonsense purpose for the expenditure of taxpayer funds may be necessary.
Petitioners argue that the documentation would be useful with respect to the immigration status of those applying for the IDNYC card, and that as members of the Banking Committee, their concern for accuracy in financial institution *430 identification was paramount. Petitioners did not clarify how this highly redacted production would achieve that goal.
After review, in order for this court to require respondents to engage in an undertaking that would cost the City of New York up to six million dollars, petitioners would need a showing of good or reasonable cause. It would be nonsensical for this court to order such an outrageous expenditure without a concrete purpose for the documents which would be redacted in large part. Petitioners may obtain the majority of the information sought through a data dump of the applicant’s disclosable IDNYC information, which could be provided by respondents.
Nevertheless, petitioners did not specifically request compliance with their FOIL requests, they requested separate mandates entirely.
Petitioners seek a ruling that the respondents’ decision to not retain underlying application materials collected, and the lack of collection thereon beginning January 2017 into the future, violates the premise of FOIL and exceeds the jurisdiction of respondents. As discussed above, FOIL does not mandate the retention of documents, it mandates disclosure of those documents created or retained by a government agency within New York State and not subject to the exemptions in sections 87 or 89. Therefore, the decision by Commissioner Banks for the City of New York not to continue to retain the underlying application materials does not violate FOIL.
Therefore, no right of action for the petitioners beyond the compliance for document production under FOIL arises, and this right has not been invoked.
4. The IDNYC Confidentiality Provision
As part of the IDNYC program, certain promises were made to applicants regarding the retention of their personal application materials. Specifically, in response to the question of what will happen to retained documents, the answer within the FAQ of the IDNYC webpage states:
“[t]he City is wholly committed to protecting the privacy of IDNYC applicants and cardholders. As required by Local Law 35 (the legislation that created the IDNYC program), the City will protect the confidentiality of all IDNYC applicants to the maximum extent allowed by applicable federal and state law. In addition, in November 2014, Commissioner Banks of the Human Resources Administration issued several executive orders that address *431 how confidential information in the IDNYC program will be handled and stored. These orders were the product of a joint working group that was focused on addressing community feedback on privacy. The orders mandate high levels of protection for IDNYC data and stringent processes for dealing with requests for IDNYC cardholder information.” (IDNYC, Privacy and Confidentiality FAQ, https://wwwl.nyc.gov/site/idnyc/about/privacy-and-confidentiality.page.)
The confidentiality provision continues to be established in executive orders issued by HRA, which purport to require the HRA general counsel to sign off on the disclosure of personally identifying information. (NY City HRA Executive Order No. E-735 of 2014.)
Respondents argue that the government may not break its promise of confidentiality under FOIL. (Matter of Harbatkin v New York City Dept. of Records & Info. Servs., 19 NY3d 373, 380-381 [2012].) Despite how enticing this argument may be, the government cannot promise what it cannot provide, inter alia, the government may not promise a greater level of confidentiality than FOIL allows.
This argument of respondents does not succeed, as it has not been shown in the papers or evidence, that this was the actual intent of the confidentiality promise, specifically, to thwart FOIL. Commissioner Banks testified that pursuant to a proper subpoena, information would be disclosed, and has been disclosed in the past. There has not been an earlier FOIL request for the underlying scanned application materials, hitherto, what has been provided, under legal subpoena, has been responded to apparently appropriately.
Consequently, although this provision appears to provide greater confidentiality than may be permitted by FOIL, it does not run afoul of FOIL nor exceed the jurisdiction of respondents.
Ergo, no right of action arises from the provision.
5. State Preemption
New York City is a city within the State of New York, and as such, is subject to the limitations of New York State law. Petitioners cite Arts and Cultural Affairs Law § 57.13 which states that “records need to be systematically managed to ensure ready access to vital information and to promote the efficient and economical operation of government.”
*432 However, this mandate simply states legislative intent and may require local governments to support a program for the orderly and efficient management of government documents, especially those of historical significance. (Arts and Cultural Affairs Law §§ 57.13-57.31.) Thus, the format for document retention and possible destruction under the IDNYC program cannot be said to run afoul of this mandate.
Thence, no violation being found, no right of action arises under this section.
Moreover, Public Officers Law § 89 (8) and Penal Law § 240.65 do not preempt the records retention schedule enacted by respondents. These provisions work to prevent the destruction of documents requested pursuant to FOIL. These sections do not address record retention schedules.
Conclusion
Much ado was made about the recent federal election of a Republican President with an immigration agenda and petitioners’ support of the President and the very public opposition of certain respondents. Notwithstanding these posi-' tions, this court cannot make new law based upon a political party’s agenda.
In consideration of the foregoing, the petition must be denied. Petitioners, under FOIL, are entitled to request the scanned application materials underlying the IDNYC program, and may be entitled to a redacted and burdensome production of such documents. Petitioners, however, have not specifically requested compliance with FOIL and a response to their FOIL requests. Considering the lack of a formal request, the unduly financially burdensome nature of the production, and lack of good cause shown, there is no reason for this court to order the production.
To that end, upon searching the record, the petition is dismissed and the remainder of petitioners’ contentions and causes of action are denied based upon, inter alia, a lack of standing, as no further right of action arises for petitioners to challenge the document retention policy regarding the IDNYC program, and no further authority can be found in Public Officers Law §§ 84-90, Arts and Cultural Affairs Law § 57.13, and/or Penal Law § 240.65 which would allow this court to mandate the retention or prohibit the destruction of the application materials in the IDNYC program.

 Respondents waived their right to request petitioners exhaust their administrative remedies when declaring that any administrative appeal would be denied in their answer.